IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**MEOSHA STUCKEY**                                                                           **PLAINTIFF**

**V.**                                   **NO. 4:16-CV-186-DMB-JMV**

**CLARKSDALE MUNICIPAL SCHOOL**
**DISTRICT**                                      **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

This First Amendment action is before the Court on Clarksdale Municipal School District's motion for summary judgment, Doc. #26, and motion to strike, Doc. #33.

**I**
**Procedural History**

On September 13, 2016, Meosha Stuckey filed a complaint in this Court alleging that the Clarksdale Municipal School District, her former employer, violated the First Amendment by retaliating against her based on an erroneous belief that she had spoken to the press about cheating in the District. Doc. #1. The District answered the complaint on October 5, 2016. Doc. #6.

On August 7, 2017, following a period of discovery, the District filed a motion for summary judgment. Doc. #26. Stuckey responded in opposition to the motion on August 21, 2017. Doc. #30. On August 28, 2017, the District replied, Doc. #32; and also filed a motion to strike portions of an affidavit of Stuckey submitted in response to the summary judgment motion, Doc. #33. Stuckey responded in opposition to the motion to strike on September 11, 2017, Doc. #34; and the District replied on September 18, 2017, Doc. #35.

**II**
**Summary Judgment Standard**

Under Rule 56 of the Federal Rules of Civil Procedure, "[s]ummary judgment is proper

only when the record demonstrates that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law." *Luv N' Care Ltd. v. Groupo Rimar*, 844 F.3d 442, 447 (5th Cir. 2016). "A factual issue is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party and material if its resolution could affect the outcome of the action." *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 226 (5th Cir. 2015) (internal quotation marks omitted). On a motion for summary judgment, a court must "consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor." *Edwards v. Cont'l Cas. Co.*, 841 F.3d 360, 363 (5th Cir. 2016).

In seeking summary judgment, "[t]he moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (internal quotation marks and alterations omitted). If the moving party satisfies this burden, "the non-moving party must go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id*. (internal quotation marks omitted). "Where the nonmoving party bears the burden of proof at trial, the moving party satisfies this initial burden by demonstrating an absence of evidence to support the nonmoving party's case." *Celtic Marine Corp. v. James C. Justice Cos., Inc.*, 760 F.3d 477, 481 (5th Cir. 2014).

### III
### Motion to Strike

In its motion to strike, the District "requests that those portions of plaintiff's affidavit which are inadmissible hearsay, speculation and not based upon personal knowledge of the plaintiff be stricken ...." Doc. #33 at 3. In response, Stuckey argues that the motion fails to specifically

identify the allegedly improper statements. Doc. #34. The District's reply specifically identifies approximately thirty statements sought to be excluded. Doc. #35.

It is axiomatic that neither hearsay nor statements not based on personal knowledge may create a genuine issue of material fact. *See Harris ex rel. Harris v. Pontotoc Cty. Sch. Dist.*, 635 F.3d 685, 692 (5th Cir. 2011) ("Hearsay evidence inadmissible at trial cannot be used to create a genuine issue of material fact to avoid summary judgment."); *Bolen v. Dengel*, 340 F.3d 300, 313 (5th Cir. 2003) (affidavit not based on personal knowledge "fails the requirements of summary judgment evidence"). However, a "court is not required to review large quanta of evidence to ferret out inadmissible statements." *Tucker v. SAS Inst., Inc.*, 462 F.Supp.2d 715, 722 (N.D. Tex. 2006).

Stuckey is correct that the District's motion fails to identify specific statements to be stricken.[1] Accordingly, the motion to strike will be denied. Nevertheless, in considering the motion for summary judgment, the Court has disregarded those portions of Stuckey's affidavit which are clearly hearsay, clearly lack a basis of personal knowledge, or both. *Bellard v. Gautreaux*, 675 F.3d 454, 461 (5th Cir. 2012) (district court may sua sponte exclude evidence at summary judgment stage).

## IV
## Factual Background

### A. The Parties

Sometime in 2010, the Clarksdale Municipal School District hired Meosha Stuckey to work at the District's Thomas E. Shaw School. Doc. #30-1 at ¶ 2; Doc. #27-1 at 34–35. In 2010 or 2011, Stuckey began work as a science teacher at the District's Oakhurst Intermediate School.

---

[1] While the reply contains the requisite specificity, "[r]eply briefs cannot be used to raise new arguments." *Hollis v. Lynch*, 827 F.3d 436, 451 (5th Cir. 2016).

3

Doc. #30-1 at ¶ 2; Doc. #27-1 at 34–35. During the period relevant to this suit, Dennis Dupree, Sr. served as the District's Superintendent. Doc. #27-1 at 37.

### B. *The Clarion Ledger* Story

On May 13, 2014, the first day of state testing, Stuckey walked into Oakhurst and noticed "the attitude was different." Doc. #27-1 at 39. After investigating, Stuckey learned that "Dupree was very angry because some teachers had went to *The Clarion Ledger* and said something about cheating in the district." *Id*.

The same day, Dupree attended a faculty and staff meeting at Oakhurst. *Id*. at 40–41. At the meeting, Dupree said that there was no reason to have gone to the press, that he was "angry," and that "he was going to weed out who did it ...." *Id*. Dupree also stated that "before he left [the] school district everybody that he thinks had anything to do with it [would] be gone ...." *Id*. According to Stuckey, Dupree "was angry because the newspaper was involved, and ... [because] somebody gave the [test] scores." *Id*. at 42.

### C. 2014–2015 Academic Year

During the summer, Frederick Ford replaced "Ms. Rhodes" as the principal of Oakhurst. Doc. #27-1 at 37, 42–43. Stuckey, who was on a year to year contract, had her contract renewed for the 2014–2015 academic year. *Id*. at 45–46.

Beginning in August of 2014, Ford, who had previously supervised Stuckey at another school without problem, began acting hostilely toward Stuckey. *Id*. at 35; Doc. #30-1 at ¶¶ 12–20. Specifically, Ford (1) followed Stuckey around the school; (2) told other teachers to follow Stuckey; (3) told other teachers that Stuckey "could not teach, had bad breath and body odor;" (4) excluded Stuckey from a staff meeting; (5) sided with another science teacher during an argument with Stuckey; (6) delayed in approving Stuckey's request to use mobile computer carts and then

"had others ... come down and count the computers several times;" and (7) removed "honor students" from Stuckey's class during a standardized test and then did not allow the students to complete the test." Doc. #30-1 at ¶¶ 12–20. Additionally, in May 2015, Ford denied a request by Stuckey to transfer to a health teacher position. *Id.* at ¶ 21.

### D. 2015–2016 Academic Year

Ford's treatment of Stuckey continued throughout the 2015–2016 year. During that time, Ford (1) announced at an August 2015 staff meeting that another teacher's students had outperformed Stuckey's and then said Dupree did not want Stuckey to see the scores; (2) got in an argument regarding Stuckey with a teacher Stuckey was close to, leading the teacher to quit; and (3) would excuse other faculty members from morning duty with Stuckey and then would not discipline students Stuckey sent to him. *Id.* at ¶¶ 21–25.

Toward the end of 2015, Stuckey's son was shot. *Id.* at ¶ 25; Doc. #27-1 at 65. On January 1, 2016, Stuckey called Ford regarding her son. Doc. #27-1 at 65; Doc. #30-1 at ¶ 25. Ford told Stuckey that Dupree had "approved him to collect donated days on [her] behalf from the entire school district, so that [she] could keep ... full pay" while caring for her son. Doc. #30-1 at ¶ 25. Ford also stated that Dupree had hired a sub for Stuckey's class. *Id.* From January until March 2016, Ford made numerous representations to Stuckey "that he had donated days waiting [for her] from the entire school district." *Id.* at ¶ 27. However, contrary to District practice, notices regarding the leave donation request were not placed in other schools. *See* Doc. #30-2 at ¶¶ 5–6.

Sometime in April 2016, Stuckey's full pay ran out. Doc. #30-1 at ¶ 28. Stuckey texted Ford regarding the status of her donated leave and received a response that Ford "was working on it." *Id.* In July 2016, Stuckey met with Dupree regarding her leave. *Id.* at ¶ 31. Dupree said he "never knew anything about any donated days at all." *Id.*

5

On September 13, 2016, Stuckey filed this action, asserting a single claim of First Amendment retaliation through the vehicle of 42 U.S.C. § 1983. Doc. #1.

## V
## Analysis

"The First Amendment prohibits not only direct limits on individual speech but also adverse governmental action against an individual in retaliation for the exercise of protected speech activities." *McLin v. Ard*, 866 F.3d 682, 696 (5th Cir. 2017). "To establish a § 1983 claim for employment retaliation related to speech, a plaintiff-employee must show: (1) he suffered an adverse employment action; (2) he spoke as a citizen on a matter of public concern; (3) his interest in the speech outweighs the government's interest in the efficient provision of public services; and (4) the speech precipitated the adverse employment action." *Moss v. Harris Cty. Constable Precinct One*, 851 F.3d 413, 420–21 (5th Cir. 2017).

The District first argues that "plaintiff did not make any statements to *The Clarion Ledger* and, therefore, she cannot show that any of the alleged retaliatory actions were due to her exercise of protected speech." Doc. #27 at 6. Stuckey, citing the recent United States Supreme Court decision in *Heffernan v. City of Paterson*, 136 S.Ct. 1412 (2016), argues that "employees are protected from retaliation even if they did not engage in protected activity as long as the employer believes the [employee] engaged [in] protected activity." Doc. #31 at 6.

In *Heffernan*, an employee brought a First Amendment retaliation claim based on the allegation that he was demoted because his supervisor "incorrectly believed ... that the employee had supported a particular candidate for mayor." 136 S.Ct. at 1416 (emphasis omitted). The district court dismissed the employee's First Amendment claim on the ground that he had not engaged in "First Amendment conduct." *Id*. The Third Circuit affirmed. *Id*. On appeal, the Supreme Court reversed the Third Circuit, holding that "[w]hen an employer demotes an employee

6

out of a desire to prevent the employee from engaging in political activity that the First Amendment protects, the employee is entitled to challenge that unlawful action under the First Amendment and 42 U.S.C. § 1983—even if, as here, the employer makes a factual mistake about the employee's behavior." *Id*. at 1418.

Here, the District does not dispute that the alleged underlying First Amendment activity – communication with *The Clarion Ledger* on the issue of standardized test cheating – would have qualified for First Amendment protection. Accordingly, under *Heffernan*, the fact that Stuckey did not actually speak to *The Clarion Ledger* about the cheating is not per se fatal to her claim so long as there is a genuine issue of material fact that she suffered an adverse employment action because of a belief that she engaged in such activity. *Id*. In this regard, the District argues that Stuckey did not suffer an adverse employment action and has presented "no evidence to support her contention that the school district believed she made comments to *The Clarion Ledger*" or that if such a belief existed, there is a causal connection between such belief and the allegedly adverse actions. Doc. #27 at 6. Stuckey responds that the allegedly wrongful denial of donated leave was a materially adverse employment action and that Dupree's alleged misstatement regarding the availability of such leave allows an inference that "Dupree and ... Ford worked together as leaders of the district to retaliate against Plaintiff." Doc. #31 at 7. Stuckey does not directly address the District's argument that there is no evidence Ford or Dupree believed Stuckey spoke with *The Clarion Ledger*.

For a First Amendment retaliation claim, "causation requires evidence that the decision-maker have some predicate knowledge of a plaintiff's protected speech." *Bosque v. Starr Cty.*, 630 F. App'x 300, 305 (5th Cir. 2015). However, "direct evidence of retaliatory motive is not necessary to show causation." *Id*. Thus, a plaintiff may rely on circumstantial evidence, such as

7

the knowledge of subordinates "who regularly met" with the decisionmaker, to establish the decisionmaker's knowledge. *Id.*

During her deposition, Stuckey conceded there is no evidence "Dupree or anybody else at the school district" believed she spoke with *The Clarion Ledger*. Doc. #27-1 at 62. However, in her affidavit, she asserts that Lowanda Tyler-Jones, the former principal at the heart of the cheating, "suspected" that Stuckey was "involved in the reporting of the cheating." Doc. #30-1 at ¶¶ 6–8. Stuckey bases this assertion on the fact that, at an unknown time, Tyler-Jones began acting rude to Stuckey when she had previously been "cordial and friendly." *Id.* at ¶ 8.

In essence, Stuckey asks this Court to infer that Tyler-Jones' rudeness, which occurred at an indeterminate time, was caused by a belief that Stuckey had spoken with *The Clarion Ledger*, and then to infer, without any evidence, that Tyler-Jones communicated this belief to Dupree or Ford and that either man believed the assertion. The Court declines to engage in this type of speculation. *See Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 258 (5th Cir. 2009) ("Lee merely reasons that because of Redd's statement about managers' generalized knowledge of complaints and the fact that Redd had discussed Lee's potential firing with Alexander, Redd must have known about Lee's EEOC complaints and must have considered them when deciding that firing Lee was merited. Lee offers only speculative inferences to support his assertion, which is insufficient to demonstrate the existence of a genuine issue of material fact."). Thus, the Court concludes that, there is no evidence that anybody in the District, much less Dupree or Ford, believed that Stuckey spoke to *The Clarion Ledger* regarding the cheating scandal. In the absence of such evidence, summary judgment against Stuckey's claim must be granted.[2]

---

[2] Having reached this conclusion, the Court declines to consider whether the refusal to solicit leave donations may be deemed an adverse employment action in a First Amendment retaliation claim.

## VI
## Conclusion

For the reasons above, the District's motion to strike [33] is **DENIED** and the District's motion for summary judgment [26] is **GRANTED**. This action is **DISMISSED with prejudice**.

**SO ORDERED**, this 1st day of November, 2017.

**/s/ Debra M. Brown**
**UNITED STATES DISTRICT JUDGE**
